IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Christine M. Arguello**

Civil Action No. 08-cv-00077-CMA-CBS

TERRY UNRUH,

    Plaintiff,

v.

STATE OF COLORADO DEPARTMENT OF CORRECTIONS,

    Defendant.

---

## OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

---

This is an employment discrimination and retaliation case. Plaintiff Terry Unruh ("Plaintiff") brings a claim under Title VII of the Civil Rights Act of 1964 alleging that Defendant, the State of Colorado Department of Corrections ("Defendant"), her former employer, discriminated against her because of her gender and then retaliated against her when she complained of the discrimination. (Doc. # 1.) This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. # 30), Plaintiff's response (Doc. ## 42, 43), and Defendant's reply (Doc. # 45). Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question). For the reasons stated below, the Court grants Defendant's Motion for Summary Judgment.

## I.  BACKGROUND

**A.     FACTS**

Because the Court is addressing Defendant's motion for summary judgment, the Court views the facts in light most favorable to Plaintiff, the non-movant.  Thus, reasonable inferences are drawn and factual ambiguities are resolved in her favor.

Plaintiff, a female, began employment with Defendant on December 1, 1988. At the time of the at-issue events, Plaintiff had worked for Defendant for more than 15 years.  In her EEOC Charge of Discrimination, Plaintiff alleges a period of discrimination beginning on June 1, 2005, and continuing to August 31, 2005, when she left her employment with Defendant.  (Doc. # 43, Ex. 1 at 16-17; Doc. # 30, Ex. C.)

*Assault Incident and Paid Administrative Leave*

In May 2005, Warden Shoemaker received information that Plaintiff had "assaulted" another female officer ("Officer King"), by placing her hands on the back of the Officer King's neck ("Assault Incident").  (*Id.*, Ex. G, ¶ 13.)  Based on the seriousness of the Assault Incident allegations, Warden Shoemaker appointed a Fact Finding Panel to review and investigate the allegations and determine an appropriate course of action.  The Fact Finding Panel convened on May 26, 2005, and submitted its recommendations to Warden Shoemaker on June 2, 2005.  One week later Warden Shoemaker transferred the investigation of the Assault Incident to the Office of the Inspector General ("OIG").  (*Id.*)  On July 6, 2005, Plaintiff was placed on paid administrative leave from her employment pending conclusion of the OIG investigation. Warden Shoemaker explained to Plaintiff that placing her on leave "was best for the

2

staff." Plaintiff received a letter attributing the leave to a rule violation (Rule 1450-1) and stating that her presence at work "may impair the investigation." (*Id.*, Ex. 12.) Plaintiff charges that, during the OIG investigation, Defendant denied Plaintiff access to a cabinet where she stored her personal belongings and that she was never permitted to retrieve her belongings from the cabinet. (Doc. # 43, Ex. 1 at 17.)

*Shift Transfer*

On or about May 28, 2005, Plaintiff's supervisor, Major Chavez, advised Plaintiff via telephone that she was being transferred from the swing shift to the graveyard shift. Plaintiff responded by telling Major Chavez that she "had things going on at home" and "needed to stay on [the swing shift]". Major Chavez said, "I know you do, but you're a soldier, suck it up and work it out, you're still going to graves." She said in response, "Oh, I see, you're going to move the girl to accommodate the boys, is that it?" Major Chavez yelled back, "Get over it, Captain Unruh, that's the way it is. You're going to graves." (*Id.* at 19-20.)

Plaintiff alleges that on June 2, 2005, after roll call at the Denver Reception Diagnostic Center ("DRDC"), one of her male colleagues, Captain Burr, admitted to Plaintiff that he had been given a choice to go either to the graveyard shift or the swing shift. Captain Burr then allegedly said "too bad you didn't get the choice I got, but I got to choose." Plaintiff claims she confronted Major Chavez about whether Captain Burr had in fact been given a choice and Major Chavez admitted that he had. (*Id.* at 20.)

On or about June 15, 2005, Plaintiff complained to Major Chavez that her transfer to the graveyard shift constituted discrimination. According to Plaintiff, Major Chavez admitted to Plaintiff that the transfer was made to accommodate Captain Burr

3

because Captain Burr did not like the swing shift.  On July 1, 2005, Plaintiff again complained to Major Chavez about what she felt was discrimination regarding her assignment to the graveyard shift.  (*Id.* at 19, 21.)

On July 25, 2005, Plaintiff filed two grievances, one for retaliation and one for hostile work environment.  On that same day, she also submitted a complaint of discrimination to the OIG.  (Doc. # 45, Ex. Z, Ex. AA; Doc. # 43, Ex. 7.)

On August 12, 2005, Defendant held a "R 610" hearing to address the Assault Incident, over which Warden Shoemaker presided.  She asked Plaintiff whether Officer King had given Plaintiff permission to touch Officer King.  Plaintiff responded by saying that Warden Shoemaker, herself, often grabs and hugs Plaintiff without asking Plaintiff for permission.  (Doc. # 43, Ex. 1 at 18.)

### *Allegations*

Plaintiff asserts that she was retaliated against because of her "complaints" (Plaintiff's allegations are quite vague and the Court infers that the "complaints" she references are the oral complaints to Major Chavez about the shift transfer and Plaintiff's written grievances).  Plaintiff asserts that she was being ignored at work and treated as if she were *persona non grata*.  Plaintiff cites the following as examples of her mistreatment:

1. She was given contradictory instructions regarding her performance, *e.g.*, first she was told to be "kindler and gentler" with inmates, then she was told the opposite.  (*Id.* at 17.)  Plaintiff does not provide a date for this alleged incident.
2. She was subjected to the unusual procedure of being called into work when she was off work to change a word in a report.  As she describes it, "I was called at

my home and ordered to drive in to the facility from my home (a distance of 32 miles) one way to change a word on a document that Major Chavez was supposed to produce himself." (*Id.* at 18-19.) Plaintiff does not provide a date for this alleged incident.

3. She was instructed to do a certain clean-up because ". . . that's woman's work." (*Id.* at 22.) Plaintiff does not provide a date for this alleged incident.

4. She was moved six times from shift to shift, always to accommodate males. (*Id.* at 18.) Plaintiff does not provide any dates for these alleged shift changes.

5. When she asked about a job opening for the position of ERT commander, she was told it had been filled already by a male and that "[t]he ERT commander position is not for a female." (*Id.* at 23-24.) Plaintiff does not provide a date for this alleged incident.

*Resignation*

On August 23, 2005, while still on paid administrative leave, Plaintiff tendered her resignation, effective August 31, 2005. Plaintiff asserts that she was forced to resign due to the unreasonable and oppressive situation at work and, thus, her resignation was in fact a "constructive discharge." (Doc. # 43, Ex. 1 at 17; Ex. 9 at 8.)

Two days later, however, on August 25, 2005, Plaintiff changed her mind and attempted to withdraw her resignation in a telephone call to Suzanne Tate ("Tate"), an employee in the Warden's office. Tate told Plaintiff that she could not withdraw her resignation. As a result, Plaintiff wrote a letter to Warden Shoemaker, in which she challenged the decision to deny her attempted withdrawal. As Plaintiff describes it, she

was "essentially begging them . . ." but she was not allowed to withdraw her letter of resignation. Plaintiff received pay through August 31, 2005. (Doc. # 43, Ex. 11 at 1; Ex. 2, ¶¶ 24, 25.)

**B.    PROCEDURAL HISTORY**

Plaintiff filed her charge of discrimination with the EEOC on June 20, 2006. (Doc. # 30, Ex. C.) She wrote that:

> I was hired on December 1, 1988. As a result of my being switched to graveyard shift on June 1, 2005, to accommodate two male staff members. I complained to my Major and stated that they were going to move the girl to accommodate the boys. As a result, I was investigated for a petty incident. I resigned on August 31, 2005, from my position as Captain. I believe I was discriminated and retaliated against based on my sex, female in violation of Title VII of the Civil Rights Act of 1964, as amended.

(*Id.*)

Plaintiff filed the instant Complaint on January 13, 2008. (Doc. # 1.) She asserted two claims for relief, alleging that Defendant sexually discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* Defendant filed its Motion for Summary Judgment on October 1, 2008, arguing that Plaintiff's claims fail as a matter of law because (1) Plaintiff failed to exhaust her administrative remedies, resulting in her claims being untimely; and (2) even if timely, her claims fail because she has not made out a prima facie case on either claim. (Doc. # 30.) Plaintiff filed responses on November 24 and 25, 2008 (Doc. ## 42, 43), and Defendant replied on December 9, 2008. (Doc. # 45.)

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Fed.R.Civ.P. 56(c) provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  A fact is "material" if it pertains to an element of a claim or defense; a factual dispute is "genuine" if the evidence is so contradictory that if the matter went to trial, a reasonable party could return a verdict for either party.  See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party.  *Allen v. Minnstar, Inc.*, 8 F.3d 1470, 1476 (10th Cir. 1993), and any factual ambiguities must be resolved in favor of the nonmovant, thus favoring the right to a trial.  *Houston v. Nat'l General Ins. Co.*, 817 F.2d 83, 85 (10th Cir. 1987).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323).  The "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  After the movant has met its initial burden, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of the claim such that a reasonable jury could find in its favor.  See *Anderson*, 277 U.S. at 248; *Simms v. Okla.*

7

*ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). The nonmovant must go beyond the allegations and denials of his pleadings and provide admissible evidence, which, as mentioned, the Court views in the light most favorable to the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). However, conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004).

### III.  ANALYSIS

Plaintiff's complaint alleges two claims for relief under Title VII:  discrimination and retaliation. Unfortunately, the allegations are so vague that the Court is forced to resort to other sources, including the EEOC charge, to discern with more specificity the actual nature of the claims. Giving the Plaintiff the benefit of every doubt with respect to the "discrimination" claim, the Court interprets the Plaintiff's allegations as supporting two claims of disparate treatment: one relating to the transfer to the graveyard shift, the other relating to the "constructive discharge." With respect to the "retaliation" claim, the Court understands Plaintiff to allege that she was retaliated against for complaining about the shift transfer.[1]

---

[1] Plaintiff alleges a hostile work environment claim in her response to Defendant's motion for summary judgment; however, a response is not the appropriate forum for alleging new claims. That is to be done in the complaint. *See* Fed.R.Civ.P. 7, 8. Because Plaintiff did not aver the hostile work environment claim in her pleadings, it will not be considered.

Defendant moves for summary judgment on all of Plaintiff's claims. The Court begins its analysis by dispensing with a threshold question: does the Court have jurisdiction?

## A.  TIMELINESS – EEOC EXHAUSTION BAR DATE

Before the Court can address the merits of Plaintiff's claims, it must first decide whether they are time-barred. If they are, the Court lacks subject matter jurisdiction to consider the claims. *Shikles v. Sprint/United Management Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005). Plaintiff was required to exhaust her administrative remedies, *i.e.*, she had to file a claim with the Equal Employment Opportunity Commission (EEOC) within 300 days of the alleged discriminatory conduct. 42 U.S.C. § 2000e-5(e)(1); *Duncan v. Manager, Dep't of Safety, City & County of Denver*, 397 F.3d 1300, 1308 (10th Cir. 2005). If she failed in this task, her claims are time-barred. The exhaustion "requirement is intended to protect employers by giving them notice of the discrimination claims being brought against them, in addition to providing the EEOC with an opportunity to conciliate the claims." *Foster v. Ruhrpumpen*, Inc., 365 F.3d 1191, 1195 (10th Cir. 2004). Thus, requiring plaintiffs to exhaust administrative remedies serves the policy goals of notice and judicial economy.

Each incident of discriminatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Martinez v. Potter*, 347 F.3d 1028, 1210 (10th Cir. 2003) (internal quotation marks and citation omitted). Thus,"[i]n the context of suits based on discrete acts, a court may easily determine whether the plaintiff filed a claim within the limitations period. *Tademy v. Union Pacific Corp.*, 520 F.3d 1149, 1156 (10th Cir. 2008). Discrete acts "occur on the day that [they] happen." *Id.* (citing *National Railroad Passenger Corp. v. Morgan*, 536

U.S. 101, 110 (2002). For example, a refusal to hire is a discrete act, the accrual period for which begins on the day the decision not to hire was made.

Plaintiff filed her charge of discrimination with the EEOC on June 20, 2006. Subtracting 300 days from this date, the Court reaches August 24, 2005. The Court thus lacks jurisdiction for any discrete acts which occurred before August 24, 2005, *i.e.*, the EEOC Exhaustion Bar Date.

### 1. Disparate Treatment – The Transfer

The parties dispute the relevant date with respect to Plaintiff's transfer to the graveyard shift. Defendant states the operative date is April 21, 2005, when Plaintiff allegedly learned of the pending transfer. Plaintiff argues the operative date is May 28, 2005, the day she was actually transferred. Regardless, both dates are outside the filing period. Thus, Plaintiff's claim of disparate treatment arising from the transfer to the graveyard shift is time-barred.

### 2. Disparate Treatment – The Discharge

The parties also dispute the operative date for the "constructive discharge." Given the procedural posture, the Court construes this fact in favor of Plaintiff. For purposes of this motion, the Court accepts Plaintiff's assertion that the effective date of her alleged "constructive discharge" is August 31, 2005, which is within the EEOC Exhaustion Bar Date. Thus, Plaintiff's disparate treatment claim based on constructive discharge is timely.

### 3. Retaliation – Administrative Leave

Plaintiff was placed on paid administrative leave on July 6, 2005, pending the outcome of the OIG investigation into the Assault Incident. She claims that her

placement on paid administrative leave was in retaliation for her "complaints." Because that date is outside the EEOC Exhaustion Bar Date, Plaintiff's retaliation claim based on her placement on paid administrative leave is time-barred.

In sum, Plaintiff's claim of disparate treatment relating to the transfer and her claim of retaliation relating to the administrative leave are time barred and cannot be considered by this Court. Only Plaintiff's claim of disparate treatment relating to her "constructive discharge" claim is timely and subject to consideration by the Court with respect to whether she has satisfied her burden of establishing a prima facie case.

**B.**     ***PRIMA FACIE* CASE**

The plaintiff's task in establishing a "prima facie" case differs according to the cause of action. In the traditional gender discrimination case, *i.e.*, disparate treatment, the prima facie case is only the first part of a three-part analysis. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Once the plaintiff has established a *prima facie* case, the elements of which are discussed below, the burden shifts to the defendant to offer a legitimate non-discriminatory reason for the complained-of action. *See Swackhammer v. Sprint/United Management Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007). If the defendant succeeds, the final step is reached, at which the plaintiff must show that the defendant's proffered reason is mere "pretext." *Id.*

As mentioned, the Court construes Plaintiff's pleadings as alleging two incidents of disparate treatment: the transfer to the graveyard shift and the "constructive

discharge." Because the claim arising from the transfer is time-barred, the Court considers the merits only of the claim arising from the "constructive discharge." [2]

As with other disparate treatment claims, Plaintiff must present genuine issues of material fact as to each element. "[T]he elements required for . . . a [*prima facie*] showing are somewhat flexible depending on the facts of the case." *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1325 (10th Cir. 2004). In the instant case, Plaintiff can satisfy her burden by establishing: 1) that she is a member of the class protected by the statute; 2) that she was qualified for her job; 3) that despite her qualifications, she was "discharged"; and 4) the job was not eliminated after her "discharge." *Id*. For purposes of the Motion for Summary Judgment, the first two elements are conceded and the Court will focus on the third element, whether Plaintiff was "discharged."

"A constructive discharge occurs when a reasonable person in the employee's position would view her working conditions as intolerable and would feel that she had no other choice but to quit." *Tran v. Trustees of State Colleges in Colorado*, 355 F.3d 1263, 1270 (10th Cir. 2004). "In determining whether an employee's working conditions would cause such feelings in a reasonable person, we apply an objective test under which neither the employee's subjective views of the situation, nor her employer's

---

[2] A constructive discharge claim can be analyzed as part of a hostile work environment claim or as part of the burden-shifting paradigm used to evaluate discrete instances of disparate treatment. See *McDonnel Douglas,* 411 U.S. at 802; *Pennsylvania State Police v. Suders*, 542 U.S. 129 (2004). In the instant case, Plaintiff never asserted any claims of a hostile work environment in her complaint, nor has she adduced facts that would allow a reasonable jury to conclude the alleged harassment was sufficiently severe or pervasive to alter her conditions of employment. As such, the Court considers Plaintiff's claim of "constructive discharge" as alleging a discrete event, under which the *McDonnel Douglas* burden-shifting analysis applies. *McDonnel Douglas,* 411 U.S. at 802*; Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1170 (10th Cir. 2007).

subjective intent with regard to discharging her, are relevant." *Id*. "The question is not whether the employee's resignation resulted from the employer's actions, but whether the employee had any other reasonable choice but to resign in light of those actions." *Id*.

Although Plaintiff characterizes the work environment as "oppressive," the facts she musters in support of her claim suggest otherwise. First, there is the fact that Plaintiff tendered her resignation on August 23, 2005, effective August 31, 2005. Two days later she sought to rescind her resignation. This attempted withdrawal is a critical fact, one which Plaintiff attempts to diminish by re-framing the question in terms of whether, by law, she was permitted to withdraw her resignation. Whether or not state law permitted her to rescind her resignation is irrelevant to an inquiry regarding whether her working conditions were so oppressive or intolerable that she felt she had no other choice but to quit.

In addition, Plaintiff totally ignores and avoids mention of the fact that she was on **paid** administrative leave during the period immediately preceding her resignation. The Court notes the obvious in remarking that Plaintiff was more or less absent from work for a period lasting from July 6, 2005 to August 31, 2005, and, more importantly, she was paid for that time. The Court is not persuaded that these working conditions – a paid leave of absence – satisfy the "objectively intolerable" standard for sustaining a claim of constructive discharge. *Sandoval*, 388 F.3d at 1325.

The Court cannot reconcile the notion that Plaintiff's working conditions had become unbearable with the undisputed facts that Plaintiff was willing to return to work only two days after her resignation, this following a period of almost two months of paid

leave, during which she had virtually no contact with her employer.  Even assuming the merits and timeliness of Plaintiff's allegations – being denied access to a cabinet during the OIG investigation, being subject to an "unusual" procedure of being called into work while off-duty, contradictory instructions, and occasional sexist remarks – the factual support for her claim of constructive discharge is altogether barren.  That is, these are not "objectively intolerable" working conditions.

After careful review of the record, the Court thus concludes that the "evidence produced by [Plaintiff] could not lead a rational juror to conclude that a reasonable person would have felt compelled to resign."  *Id.* at 1326.  Defendant is entitled to summary judgment on Plaintiff's constructive discharge claim.

## IV.  CONCLUSION

Based on the foregoing, the Court ORDERS that Defendant's Motion for Summary Judgment (Doc. # 30) is GRANTED.  Accordingly, this case is DISMISSED WITH PREJUDICE.

It is further ORDERED that the Final Trial Preparation Conference currently scheduled for June 30, 2009 and the trial set to begin July 6, 2009 are VACATED.

It is further ORDERED that Defendant shall have its costs by the filing of a Bill of Costs with the Clerk of this Court within ten days of the entry of judgment.

DATED:  June 23, 2009

BY THE COURT:

*Christine M Arguello*
_____
CHRISTINE M. ARGUELLO
United States District Judge